UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
LAURIE GUNTHORPES,

                Plaintiff,

                                                                 REPORT AND
    -against-                                    RECOMMENDATION
                                                                 21 CV 5140 (ARR)(RML)

THE IM. GROUP, LLC,

                Defendant.
-----------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated September 8, 2023, the Honorable Allyne R. Ross, United States District Judge, referred plaintiff's second motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that the motion be granted.

### BACKGROUND AND FACTS

        Plaintiff Laurie Gunthorpes ("Gunthorpes" or "plaintiff") commenced this wage and hour action on September 15, 2021, against defendant The IM. Group, LLC (the "IM. Group" or "defendant") asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL"). (Complaint, filed Sept. 15, 2021 ("Compl."), Dkt. No. 1.) Defendant was properly served with the summons and complaint. (Affidavit of Service of Robert Egelston, sworn to Sept. 24, 2021, Dkt. No. 6; see also Report and Recommendation, dated Dec. 5, 2022, Dkt. No. 15, at 4-5.) Defendant has failed to answer or otherwise move with respect to the complaint. Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to defendant on January 14, 2022. (See Request for Certificate of Default, filed Jan. 14, 2022, Dkt. No. 8.) On January 20, 2022, the Clerk of the

Court noted the default of the IM. Group. (See Clerk's Entry of Default, dated Jan. 20, 2021, Dkt. No. 10.) On September 7, 2023, plaintiff filed a second motion for default judgment. (See Motion for Default Judgment, dated Sept. 7, 2023, Dkt. No. 21.) On September 8, 2023, Judge Ross referred plaintiff's motion for default judgment to me for report and recommendation.

Plaintiff seeks a default judgment on claims under the FLSA and NYLL for defendant's failure to (1) compensate her for seven bi-weekly payroll periods and (2) provide proper wage notices and wage statements. (Compl. ¶¶ 1-2, 17, 36-40, 49-52, 67-69, 72-73; see also Plaintiff's Memorandum of Law in Support of the Motion for Default Judgment, dated Sept. 7, 2023 ("Pl.'s Mem."), Dkt. No. 21-1.) Plaintiff requests an award of unpaid minimum wages, unpaid regular wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorney's fees and costs. (Pl.'s Mem. at 24.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendant of the lawsuit. Here, as explained above, plaintiff has demonstrated that defendant was properly served with the summons and complaint. Plaintiff has also demonstrated that she served the Motion for Default Judgment and accompanying submissions

on defendant in compliance with Local Rule 55.2(c).  (See Declaration of Service of Lawrence Spasojevich, Esq., dated Sept. 7, 2023, Dkt. No. 21-7.)

### A. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, the complaint, which was filed on September 10, 2021, alleges willful violations of the FLSA.  (See Compl. ¶¶ 24, 25, 28.)  Therefore, the FLSA's three-year statute of limitations applies.  Because plaintiff alleges that she was not properly paid wages from May 21 to August 13, 2021, I find that her claims are timely under the FLSA.  (Id. ¶ 15.)  Regardless of willfulness, plaintiff's claims must arise within six years prior to the filing of the complaint to be timely under the NYLL.  See N.Y. Lab. L. §§ 198(3), 663(3).  Therefore, plaintiff's claims are timely under both statutes.

### B. Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law."  Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  However, the court must also "determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law."  Id.  "To establish a claim under the FLSA, plaintiff must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an 'employee' within the meaning of the

FLSA; and (3) the employment relationship is not exempted from the FLSA." Acosta v. DRF Hosp. Mgmt. LLC, No. 18 CV 346, 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019), report and recommendation adopted, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) (citation omitted).[1]

1. Non-exempt Status

"Congress intended the FLSA to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Freeman v. Nat'l Broad. Co., 80 F.3d 78, 86 (2d Cir. 1996) (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n.18 (1945)). Consistent with this intention, the FLSA's minimum wage and maximum hour requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "Regulations promulgated by the Secretary [of Labor] provide that an employee is employed in a 'bona fide executive, administrative, or professional' capacity only if he or she is compensated on a 'salary basis.'" Yourman v. Giuliani, 229 F.3d 124, 127 (2d Cir. 2000) (citing Auer v. Robbins, 519 U.S. 452, 455 (1997)). An employee is paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his [or her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). The regulations promulgated by the Secretary of Labor provide that an employee falls under an exemption to the FLSA when: (1) the employee is "[c]ompensated on a salary or fee basis at a rate of not less than $684 per week"; (2)

---

[1] Since the NYLL "applies the same exemptions as the FLSA," the court's analysis under the FLSA is equally applicable to plaintiff's NYLL claims. Zubair v. EnTech Eng'g P.C., 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011) (quoting Ramos v. Baldor Specialty Foods, Inc., No. 10 CV 6271, 2011 WL 2565330, at *5 n. 3 (S.D.N.Y. June 16, 2011)).

4

the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(1)-(3); see also Difilippo v. Barclays Cap., Inc., 552 F. Supp. 2d 417, 422-23 (S.D.N.Y. 2008). "An employee . . . is paid on a salary basis . . . only if he [or she] 'receive[s] the full salary for any week in which [he or she] performs any work without regard to the number of days or hours worked.'" Helix Energy Sols. Grp., Inc. v. Hewitt, 598 U.S. 39, 49 (2023) (quoting 29 C.F.R. § 541.601); see also Anani v. CVS RX Servs., Inc., 730 F.3d 146, 147 (2d Cir. 2013) ("to qualify for the exemption, an employee 'must be compensated on a salary basis at a rate of not less than $455 per week.'") (citing 29 C.F.R. § 541.600(a)).

        Here, plaintiff's claims arise from defendant's failure to pay her for several weeks at her salaried rate of $2,884.62 per week. (Pl.'s Mem. at 15, 18 ("Plaintiff was compensated at a rate of $0.00 for fourteen weeks"); Compl. ¶ 15; Declaration of Laurie Gunthorpes in Support of Plaintiff's Motion for Default Judgment and Damages, dated Mar. 16, 2022 ("Gunthorpes Decl."), Dkt. No. 14-7, ¶ 10.) Plaintiff alleges that she was employed by defendant as the Director of Accounting and Finance and that her duties included overseeing the accounting and finance of defendant's business and engaging in contact with entities outside New York via electronic mail, mail, and telephone calls. (Compl. ¶ 14; Gunthorpes Decl. ¶ 6.) The regulations explain that duties "directly related to management policies or general business operations" are duties "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Significantly, they include

5

such duties as tax, finance, and accounting.  Id. § 541.201(b); see also Klein v. Torrey Point Grp., LLC, 979 F. Supp. 2d 417, 425-26 (S.D.N.Y. 2013).  Additionally, plaintiff's job title – Director of Accounting and Finance – indicates that her primary duties likely included the exercise of discretion and independent judgment with respect to matters of significance.  These facts appear to render plaintiff exempt from the requirements of the FLSA.  Nevertheless, because defendant paid her below $684 per week for the period of May 21 to August 13, 2021, she does not satisfy the salary-basis requirement to warrant a finding of exempt status and I find that she was non-exempt for that period.[2]  See, e.g., Edwards v. Clinical Rsch. Consultants, Inc., No. 15 CV 902, 2017 WL 2265834, at *10 (N.D. Ala. May 24, 2017) ("The FLSA generally requires an examination of wages on a weekly basis, so that in those weeks when no salary was paid, the plaintiffs did not meet the salary-basis test for the administrative exemption—in those weeks they were nonexempt."); see also Gordon v. City of Oakland, 627 F.3d 1092, 1093 (9th Cir. 2010) (noting that defendant "conceded at oral argument that it would have violated the minimum wage provisions of the FLSA had it . . . withheld [plaintiff's] *entire* final paycheck") (emphasis in original); Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 8, 17 (D.D.C. 2010) (finding defendants liable to plaintiffs for minimum wage damages where defendants failed to pay plaintiffs altogether for certain pay periods).

---

[2] Moreover, "exemptions are affirmative defenses, for which employers have the burden of proof." Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014), aff'd sub nom. Chen v. Major League Baseball Props., Inc., 798 F.3d 72 (2d Cir. 2015) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002)).  Courts have noted that "[w]hen pleading a claim under the FLSA, plaintiffs do not have a duty to allege any facts showing that they are non-exempt employees." Williams v. Core Energy Inc., No. 22 CV 21570, 2023 WL 5677543, at *2 (S.D. Fla. Aug. 3, 2023), report and recommendation adopted, 2023 WL 5676896 (S.D. Fla. Sept. 4, 2023) (citing Burton v. Hillsborough County, 181 F. App'x 829, 839 (11th Cir. 2006) ("To state a cause of action under the FLSA, a plaintiff is not required to allege that the Act's exemptions are inapplicable.")).

2. <u>Individual & Enterprise Coverage</u>

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, a plaintiff in a wage and hour action must show that he or she was the defendant's employee, and that the defendant was an employer subject to the coverage of each statute. For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1), (g). Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer. An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[3] 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." <u>Id.</u> § 203(a).

"Employers are subject to [the] FLSA when their employees are either engaged in commerce or in the production of goods for commerce ('individual coverage') or employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')." <u>Reyes v. Tacos El Gallo Giro Corp.</u>, No. 20 CV 3474, 2022 WL 940504, at *3 (E.D.N.Y. Jan. 25, 2022), <u>report and recommendation adopted</u>, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted). "[T]o properly allege individual or enterprise coverage, [plaintiff] need not do much. Aside from stating the nature of his [or her] work and the nature of [his or her employer's] business, he [or

---

[3] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); <u>see also</u> <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); <u>Oaxaca v. Hudson Side Cafe Inc.</u>, No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

she] must provide only straightforward allegations connecting that work to interstate commerce." Id. (citations and quotation marks omitted).

As discussed above, plaintiff has adequately pleaded that she was an employee to whom no statutory exemption applied, insofar as she alleges that she was employed by defendant and was paid at a rate of $0.00 during the period of May 21 to August 13, 2021. In addition, plaintiff alleges that defendant "was, and continue[s] to be, an 'enterprise engaged in commerce' within the meaning of the FLSA" and that defendant exceeded the $500,000 revenue threshold set the by FLSA. (See Compl. ¶¶ 8, 31, 34.) To further support the assertion that defendant was engaged in interstate commerce as defined by the FLSA, plaintiff states that she regularly handled goods in interstate commerce and that her duties included "overseeing the accounting and finance of Defendant's business, engaging in contact with entities located outside the State of New York via electronic mail, mail, and telephone calls on a regular, daily basis." (Pl.'s Mem. at 11; Compl. ¶¶ 31, 32); see Jian Long Li v. Li Qin Zhao, 35 F. Supp. 3d 300, 307-08 (E.D.N.Y. 2014) (an employee is engaged in commerce when he or she works "'in the channels' of 'interstate or foreign commerce,' or 'in activities so closely related to this commerce, as to be considered a part of it,' *e.g.*, 'regular[ ] use [of] the mails, telephone or telegraph for *interstate* communication'; 'regular[ ] travel *across State lines* while working.'" (quoting 29 C.F.R. § 779.103) (emphasis in original). Accordingly, I find that plaintiff has established that defendant is an enterprise engaged in commerce and that she is a covered employee under the FLSA and the NYLL.

### C. Damages

Once the court determines that the defaulting defendant is liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v.

8

Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff to establish [his or her] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Plaintiff requests damages in the total amount of $8,400 for unpaid minimum wages, $20,192.34 in unpaid wages, liquidated damages, wage notice and statement violations, and pre- and post-judgment interest. (Pl.'s Mem. at 16-19, 24; see also Declaration of Lawrence Spasojevich, Esq. in Support of Plaintiff's Motion for Default Judgment and Damages, dated Sept. 7, 2023 ("Spasojevich Decl."), Dkt. No. 21-2, ¶¶ 21-25.) I will address each in turn.

    1. Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l. Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

9

Here, because defendant has defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours worked. Plaintiff asserts that she worked "Monday through Friday, 10:00 a.m. to 6:00 p.m. with a one (1) hour lunch." (Gunthorpes Decl. ¶ 8.)

    a. *Unpaid Minimum Wages*

Under both the FLSA and NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; N.Y. Lab. L. § 652. "The federal minimum wage does not preempt the state minimum wage . . . and a plaintiff may recover under whichever statute provides the highest measure of damages." Cabrera v. Canela, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019). The FLSA required defendant to pay plaintiff a minimum hourly wage of $7.25 at all relevant times. 29 U.S.C. § 206(a)(1). However, New York law obligated defendant to pay plaintiff a minimum hourly wage of $15.00 during the period of May 21 to August 13, 2021. N.Y. Lab. L. § 652(a)(i). Because New York's minimum wage is higher, plaintiff may recover those amounts. 29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

| **Unpaid Minimum Wage Calculations** | | | | | |
|---|---|---|---|---|---|
| Time Period | Weeks[4] | Hours per week | Pay Rate | Required Minimum Wage | Unpaid Minimum Wages Owed |
| May 21 – August 13, 2021 | 12 | 40 | $0.00 | $15.00 | $7,200 |

---

[4] Plaintiff alleges that she was not paid for fourteen weeks. However, the period between May 21 and August 13, 2021 – the dates during which she allegedly was not paid – constitutes only twelve weeks.

As reflected in the above chart, to calculate the damages that plaintiff incurred because of defendant's failure to pay New York's minimum wage, the applicable minimum wage is multiplied by forty. See Long Lin, 2019 WL 3716199, at *3. That number is then multiplied by the number of weeks plaintiff worked during the time period at issue to determine the total amount of minimum wages owed to plaintiff. Based on the calculations in the above table, I respectfully recommend that she be awarded a total of $7,200 in unpaid minimum wages.

b. *Unpaid Regular Wages*

Plaintiff further alleges that defendant unlawfully deducted and withheld her earned wages in violation of Section 193 of the NYLL, and that she is therefore entitled to recover her full unpaid wages under New York law. (Compl. ¶¶ 23, 51, 61.) Under Section 193, no employer may make any deduction from the wages of an employee except for deductions that:

> are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; . . . are expressly authorized in writing by the employee and are for the benefit of the employee[;] . . . are related to recovery of an overpayment of wages where such overpayment is due to a mathematical or other clerical error by the employer[;] . . . [or are for] repayment of advances of salary or wages made by the employer to the employee.

N.Y. LAB. L. § 193(1). "Employers are thus forbidden from making 'deductions for spoilage or breakage; . . . deductions for cash shortages or losses; [or imposing] fines or penalties for lateness, misconduct or quitting by an employee without notice.'" Lewis v. Alert Ambulette Serv. Corp., No. 11 CV 442, 2012 WL 170049, at *5 (E.D.N.Y. Jan. 19, 2012) (quoting N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.10).

Section 193 was amended by the "No Wage Theft Loophole Act" to indicate that "[t]here is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements." 2021 N.Y. Laws ch. 397 § 1; N.Y. LAB. L. § 193(5). However,

11

the No Wage Theft Loophole Act only became effective upon its signing, one week after the time period relevant to this action. See https://perma.cc/P9KN-ENSD (indicating that the No Wage Loophole Act was signed on Aug. 19, 2021.) Prior to the No Wage Theft Loophole Act, "the prevailing view [was] that a wholesale withholding of [wages] [was] not a 'deduction' within the meaning of Labor Law § 193[.]" Hensel v. Bestpass, Inc., 77 Misc. 3d 1011, 1018 (N.Y. Sup. Ct. 2022) (citations and quotation marks omitted); see also Sokolovsky v. Silver Lake Specialized Care Ctr., No. 21 CV 1598, 2023 WL 5977298, at *12 (E.D.N.Y. Sept. 14, 2023) ("an employer's alleged failure to pay for all hours worked does not constitute an improper deduction from wages for purposes of Section 193.") (citation omitted); Kahlon v. Project Verte Inc., No. 20 CV 3774, 2022 WL 861638, *8 (S.D.N.Y. Mar. 23, 2022) (stating that Section 193 prohibits unlawful deductions from wages in contrast with a failure to pay wages altogether); Dreni v. PrinterOn Am. Corp., 486 F. Supp. 3d 712, 728 (S.D.N.Y. 2020) ("The law in this district is clear that a failure to pay, or a withholding, of wages does not constitute a "deduction" within the meaning of § 193."); Goldberg v. Jacquet, 667 F. App'x 313, 314 (2d Cir. 2016) ("In order to state a claim for a violation of NYLL § 193, a plaintiff must allege a specific deduction from wages and not merely a failure to pay wages.").

Furthermore, courts in this district have declined to apply the No Wage Theft Loophole Act retroactively to conduct that occurred before the amendment. See, e.g., Boutsikakis v. Tri-Borough Home Care, Ltd., No. 15 CV 5833, 2023 WL 3620646, at *5 (E.D.N.Y. Apr. 11, 2023); Fersel v. Paramount Med. Servs., P.C., No. 18 CV 2448, 2022 WL 14813738, at *4 (E.D.N.Y. Oct. 26, 2022); Kahlon, 2022 WL 861638, *8. Accordingly, I find that plaintiff's

12

complaint does not allege a violation of Section 193 and recommend that plaintiff's request for damages under this Section be denied.[5]

2. Liquidated Damages

Plaintiff requests liquidated damages for her unpaid wages. (See Pl.'s Mem. at 18-19); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same time period, but that the standard for awarding such damages under both statutes is the same). The NYLL allows plaintiffs to recover liquidated damages in the amount of 100 percent of minimum wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). Here,

---

[5] Plaintiff asserts for the first time in her memorandum of law in support of the motion for default judgment that defendant's conduct also violated NYLL § 191(1)(d). (Pl.'s Mem. at 16.) Section 191 regulates the frequency at which employers must pay wages, but that section expressly excludes persons "employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of one thousand three hundred dollars a week." N.Y. Lab. L. §§ 190(7), 191(1)(d); Pachter v. Bernard Hodes Grp., Inc., 10 N.Y.3d 609, 616 (N.Y. 2008). Courts have rejected claims under Section 191(1)(d) where a plaintiff's base salary exceeded the weekly earnings proscribed by Section 190(7). See, e.g., Fetet v. Altice USA, No. 21 CV 1512, 2021 WL 2941917, at *6 (S.D.N.Y. July 12, 2021) (rejecting plaintiff's argument that she was not excluded from the requirements of Section 191(1)(d) because she earned less than the weekly rate required by Section 190(7) as a result of defendants' failure to pay her wages where plaintiff alleged that her "base salary alone amount[ed] to $350,000 per year, a sum that is equivalent to over $6,700 per week."); Danusiar v. Auditchain USA, Inc., No. 20 CV 1477, 2020 WL 6126378, at *4, *8 (S.D.N.Y. Oct. 8, 2020) (rejecting same argument). Here, plaintiff alleges that she was to be paid $2,884.62 per week. (Compl. ¶ 14.) Subtracting the twelve weeks during which plaintiff was not paid would bring her yearly earnings to approximately $115,384.80. Dividing this number by fifty-two, the number of weeks in a year, brings her average weekly salary to approximately $2,218.94 – a total that is still far greater than the $1,300 threshold required for coverage under Section 191(1)(d). Therefore, I find that plaintiff is not entitled to recover under Section 191(1)(d) and recommend that her request for damages under this Section also be denied.

defendant has not answered or otherwise appeared in this action, much less demonstrated a "good faith" basis for believing the underpayment of wages was lawful. I accordingly recommend that plaintiff be awarded $7,200 in liquidated damages, which is the amount equal to her unpaid minimum wages.

        3.    <u>Wage Notices & Wage Statements</u>

Plaintiff also seeks $10,000 total in statutory damages for defendant's failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3). (Pl.'s Mem. at 16-17.) New York's Wage Theft Prevention Act ("WTPA") § 195(1) requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring. <u>Deng v. Frequency Elecs., Inc.</u>, No. 21 CV 6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022). NYLL § 195(3) requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions." <u>Id.</u> Plaintiff asserts that she never received a wage notice or wage statements from defendants. (<u>See</u> Compl. ¶¶ 28, 67, 72; Gunthorpes Decl. ¶¶ 11-12; Pl.'s Mem. at 16-17.)

The Supreme Court held in <u>TransUnion LLC v. Ramirez</u> that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation. <u>See</u> 141 S. Ct. 2190 (2021). Consequently, some courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing." <u>Beh v. Cmty. Care Companions Inc.</u>, No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); <u>see also Deng</u>, 2022 WL 16923999, at *9 (finding that plaintiff lacked standing because the "complaint contains no allegations that she was

14

somehow injured merely because of the failure to provide the required notice and statements."); You Qing Wang v. XBB, Inc., No. 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v. NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (". . . based on the record before the Court, it is not clear that [failure to provide wage notices and statements] led to an 'injury' that can be recognized by a federal court."). These cases rely primarily on the Second Circuit's reasoning in Maddox v. Bank of New York Mellon Tr. Co., N.A., where the court found that the plaintiffs had failed to allege a concrete harm arising out of the defendant's failure to timely present a certificate of discharge to the county clerk, a purely technical violation. 19 F.4th 58, 64-66 (2d Cir. 2021).

Nevertheless, other courts in this Circuit have continued to grant statutory damages for wage statement and notice violations. See, e.g., Black v. 7714 Ent., Corp., No. 21 CV 4829, 2022 WL 3643969, at *2 (E.D.N.Y. Aug. 24, 2022); Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099, at *20 (E.D.N.Y. Mar. 24, 2022); Santos v. Cancun and Cancun Corp., No. 21 CV 192, 2022 WL 1003812, at *7-8 (E.D.N.Y. Feb. 17, 2022); Lamar v. A&O Brothers Corp., No. 21 CV 169, 2022 WL 1422439, at *9 (E.D.N.Y. Feb. 2, 2022); Williams v. Miracle Mile Props. 2 LLC, No. 20 CV 3127, 2022 WL 1003854, at *10 (E.D.N.Y. Feb. 1, 2022).[6]

One such court recently found that a plaintiff bringing claims under the WTPA

---

[6] It bears noting that the Supreme Court's recent decision in 303 Creative v. Elenis appears to lower the bar for plaintiffs to establish Article III standing. 143 U.S. 2298, 2308 (2023) (contradicting TransUnion's "actual and concrete injury" standard and announcing a new, looser "credible threat" requirement).

15

for wage statement and notice violations is not required to show "the downstream impact on the plaintiff of the non-provision of the required notice." Bueno v. Buzinover, No. 22 CV 2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (adopting in part the Report and Recommendation but reversing the Report's finding that there was no Article III standing with respect to the wage statement and notice violations). In so finding, the court in Bueno emphasized that the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA, which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them—namely, through the provision of written notices with respect to employers' legal obligations—to advocate for themselves. Bueno, 2023 WL 2387113, at *3.

It is critical to note that the factual circumstances arising out of cases like TransUnion and Maddox versus those arising in cases under the WTPA are fundamentally distinct. In TransUnion, the entire class of plaintiffs had alleged that TransUnion had violated its obligations under the Fair Credit Reporting Act ("FCRA") by maintaining credit files for those plaintiffs that contained misleading Office of Foreign Assets Control ("OFAC") alerts. TransUnion, 141 S. Ct. at 2208-09. However, only 1,853 of the class members had actually suffered the reputational harm of having those misleading OFAC alerts disseminated to third-party businesses, *i.e.*, the harm FCRA sought to prevent via the disputed provisions. Id. As such, those 1,853 class members were deemed to have standing, whereas the remaining class members—whose misleading credit files had not been disseminated—were deemed not to have standing for failure to allege either actual or imminent harm. Id. at 2209. Similarly, in Maddox, the plaintiffs alleged violations of New York's mortgage-satisfaction-recording statutes and had rooted their standing to sue in "impaired access to accurate financial information," "a false

16

impression adverse to their credit status," and "the right to be free of these harms [as] recognized by the state legislature." Maddox, 19 F.4th at 61, 64-66. However, the Second Circuit found that the plaintiffs lacked standing because they had failed to plead sufficient facts to show that any of the risks of harm—namely, risk of (1) having "an actionable cloud on title to the property securing the discharged mortgage debt," (2) reputational harm; and (3) difficulty obtaining financing if they so wished—alleged by the plaintiffs, had or would likely come to fruition. Id. at 64-66.

The wage statement and notice violations alleged here are of a different class of harm from those alleged in TransUnion and Maddox. The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." Bueno, 2023 WL 2387113, at *3 (quoting Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 CV 5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)). Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wages they earned. Bueno, 2023 WL 2387113, at *3. Indeed, if an employer's failure to provide wage statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the statutory damages provisions would be rendered meaningless and unenforceable.

Here, plaintiff alleges that she never received a wage notice or wage statement from defendant during the course of her employment with defendant. (See Compl. ¶¶ 28, 67, 72; Gunthorpes Decl. ¶¶ 11-12; Pl.'s Mem. at 16-17.) As demonstrated by the damages owed to plaintiff, plaintiff was not paid the wages she earned. Therefore, I find that plaintiff has Article III standing to raise these statutory violations. The penalty for failing to provide a wage notice is $50 per day, up to $5000. N.Y. Lab. L. § 198(1-b). The penalty for failing to provide wage

17

statements is $250 per day, up to $5000.  Id. § 198 (1-d).  Plaintiff has not provided the date she began her employment with defendant; rather she has simply alleged that she was not paid from May 21 to August 13, 2021.  Therefore, the court cannot determine her full period of employment with defendant and is constrained to awarding her $50 per business day for defendant's failure to provide a wage notice during the period of May 21 to August 13, 2021 and $250 per business day for defendant's failure to provide wage statements during that period.  Accordingly, I recommend that plaintiff be awarded $7,850 for the fifty-seven business days during which she did not receive wage notices or statements.  N.Y. Lab. L. §§ 198(1-b), (1-d).

    4.   Interest

Plaintiff requests pre-judgment interest.  (Compl. at 22; Pl.'s Mem. at 14.)  The calculation of pre-judgment interest is based on unpaid wages, but not on liquidated or statutory damages.  Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), report and recommendation adopted, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).  The rate of interest is calculated at nine percent per annum, and where damages were incurred at various times, may be calculated from a single reasonable intermediate date.  N.Y. C.P.L.R. §§ 5004, 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11.  As discussed above, plaintiff has not provided the date on which she began working for defendant.  Therefore, the court will use the midpoint of the employment period at issue – July 2, 2021.  Accordingly, I respectfully recommend that pre-judgment interest be awarded on plaintiff's total unpaid wages of $7,200 from July 2, 2021 to the date of this court's judgment at a per diem interest rate of $1.78 ($7,200 x 0.09/365).

Plaintiff additionally requests post-judgment interest under 28 U.S.C. § 1961(a).

Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). Moreover, post-judgment interest under Section 1961 is mandatory. See Fermin, 93 F. Supp 3d at 53. Therefore, I respectfully recommend that plaintiff be awarded post-judgment interest under 28 U.S.C. § 1961.

Finally, plaintiff requests that post-judgment interest be increased to fifteen percent in the event that damages and pre-judgment interest remain unpaid ninety days after judgment is entered. (Pl.'s Mem. at 21-22.) Pursuant to Section 663(4) of the New York Labor Law, if any amount of the judgment awarding amounts under the NYLL remains unpaid upon the expiration of ninety days following the issuance of the judgment or ninety days after expiration of the time to file an appeal and no appeal therefrom is then pending, whichever is later, the amount of the judgment attributable to the NYLL shall automatically increase by fifteen percent. Rosendo v. Everbrighten Inc., No. 13 CV 7256, 2015 WL 4557147, at *1 (S.D.N.Y. July 28, 2015) (discussing N.Y. LAB. L. § 663(4)). Accordingly, I recommend that plaintiff's request for increased post-judgment interest in the event that defendant fails to pay damages and pre-judgment interest within ninety days of the entry of judgment be granted.

### D. Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL. See 29 U.S.C. § 216(b), N.Y. LAB. L. §§ 198, 663(1). As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam). Plaintiff has not provided time records or a specific request for

19

attorney's fees and costs. Instead, she requests leave to file a motion for the recovery of attorney's fees and costs within thirty days. (Pl.'s Mem. at 23, 24.) I recommend that this request be granted.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for default judgment be granted and that plaintiff be awarded $22,250 representing $7,200 in unpaid minimum wages, $7,200 in liquidated damages, and $7,850 for wage notice and statement violations. I also recommend that pre-judgment interest be awarded on plaintiff's unpaid wages of $7,200 from July 2, 2021 to the date of this court's judgment at a per diem interest rate of $1.78. Additionally, I recommend that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). I further recommend that plaintiff be permitted to file a motion for attorney's fees and costs within thirty days. Plaintiff is directed to serve copies of this Report and Recommendation on defendant by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
April 10, 2024